UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Stacy Brown,                                           Case No. 3:11-cv-02357

        Plaintiff

                                                       MEMORANDUM OPINION
                                                             AND ORDER

Guardsmark, LLC,

        Defendant

## INTRODUCTION

Defendant Guardsmark, LLC brings this matter before me on a motion for summary judgment under Rule 56. (Doc. No. 20). Plaintiff Stacy Brown has filed a response brief. (Doc. No. 22). Guardsmark filed a brief in reply. (Doc. No. 27). For the following reasons, Guardsmark's motion is granted in part and denied in part.

## BACKGROUND

Guardsmark, LLC is an international security services provider. (Doc. No. 20 at 1). In May of 2008, Guardsmark hired Stacy Brown. At the time of her hire, she requested assignment to the General Dynamics account in Lima; she wanted to work in Lima because it was closer to her home. (Id.). Guardsmark ultimately denied this request because the transfer would violate Guardsmark's policy forbidding employment of two relatives at one location, as her stepfather currently worked at the General Dynamics location. (Id.). Brown also expressed interest in working full time at the Ford account in Lima; however, there were only part-time openings available. (Id.). Ultimately, Brown accepted a security guard position at a company called BASF. (Id. at 11). While at BASF, Brown was reprimanded on two separate occasions for failing to provide proper paperwork to truck

drivers. (Id.). Following these mishaps, BASF asked Guardsmark to remove Brown from their location. (Doc. No. 20-1 at 3).

Heather Frey, the Guardsmark Relationship Manager, staffed Guardsmark locations and hired and fired employees. (Doc. No. 20-1 at 1). After removing Brown from BASF, Frey decided to transfer Brown to General Dynamics because her stepfather no longer worked at that location. (Doc. No. 22 at 3). Brown began work as a fire marshal at General Dynamics in January 2010. (Id.). While at General Dynamics, Brown spoke with her Caucasian co-worker, Kim Wheeler, and learned Wheeler's Caucasian daughter-in-law, Catie Boroff, also worked at the General Dynamics location. (Doc. No. 21 at 24-25). Six months later, Guardsmark removed Brown from General Dynamics because she had failed to obtain the security clearance required to work at that location. (Id. at 37).

In August 2010, after Brown had been unemployed for one month, Frey offered Brown a position at Guardsmark's Veyance location. (Id. at 40). Brown accepted the position and immediately sought a promotion to supervisor. (Id. at 39). Guardsmark filled the open supervisor positions with a Caucasian man named Vince Roth. (Id. at 40-41). After Guardsmark removed Roth from the supervisor position in June 2011, Brown once again sought the supervisor position and, Guardsmark filled it with a Caucasian woman named Ashleigh Huss. (Id. at 42). Several months after her promotion, Huss resigned and Guardsmark gave the supervisor position to Brown. (Doc. No. 20-1 at 6).

On November 19, 2010, Brown filed a charge with the EEOC alleging that General Dynamics discriminated against her by denying her initial transfer to General Dynamics, removing her from General Dynamics, and failing to promote her ahead of two less qualified Caucasian employees. (Doc. No. 21-13). On August 3, 2011, the EEOC notified Brown of her right to sue. (Doc. No. 21-21).

**STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the nonmoving party bears the ultimate burden of proof at trial, the movant is entitled to summary judgment if the movant shows that the nonmoving party failed to present evidence "to support an essential element of his or her claim." *Celotex Corp v. Catrett,* 477 U.S. 317, 322-23 (1986).

If the movant satisfies this burden, the nonmoving party "must present specific facts setting forth a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The nonmoving party needs only to present evidence from which a reasonable jury could find in that party's favor. *Id.* at 251. "All of [that] evidence and any inferences that may be drawn from that evidence [must be viewed in a] . . . light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The nonmoving party, however, must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson,* 477 U.S. at 247-48.

The party opposing the motion must "[present] enough evidence that *will be* admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary." *Alexander v. CareSource,* 576 F.3d 551, 558 (6th Cir. 2009). Summary judgment shall be awarded "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 317.

**ANALYSIS**

Through careful analysis of the facts, I find that Brown raises three issues for resolution by this court: (1) whether Guardsmark engaged in disparate treatment in violation of Title VII when it

3

initially denied Brown's transfers to General Dynamics and Ford, or when it subsequently removed Brown from her position at General Dynamics; (2) whether Guardsmark violated Title VII by promoting Roth and Huss instead of Brown; and (3) whether Guardsmark retaliated against Brown in violation of Title VII by deciding not to promote her in June 2011.  (Doc. No. 22 at 8-9, 12, 14-15).

Pursuant to Title VII of the Civil Rights Act of 1964, an employer performs an unlawful employment practice by "discriminat[ing] against any [employee] with respect to his compensation, terms, conditions, or privileges of employment because [of the] individual's race; or by limit[ing]…an employee in any way which would deprive that employee of employment opportunities, because of such individual's race." 42 U.S.C. § 2000e-2(a).

The applicable test for determining whether an employer violated Title VII depends on whether a plaintiff seeks to support her claim with direct or indirect evidence. *Clay v. United Parcel Serv., Inc.,* 501 F.3d 695, 703 (6th Cir. 2007).  As is the case here, absent direct evidence the employer engaged in a discriminatory act, courts must apply the *McDonnell Douglas* burden shifting framework. *Id.*  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for taking the adverse employment action. *Id.*  The onus is one of production, and not persuasion. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000).  If the employer articulates a legitimate non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate by a preponderance of evidence that the employer's proffered reason was pretext. *Id.* at 804.

1. **Disparate Treatment Claim**

To meet her initial burden Brown must present sufficient evidence to show (1) she was a member of a protected class; (2) she was qualified and otherwise performed her job satisfactorily; (3)

that despite her qualifications, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated individuals outside of her protected class. *Jeanlouis v. Prod. Action*, 551 F. Supp. 2d 687, 692 (N.D. Ohio 2007), *citing McDonnell Douglas,* 411 U.S. at 802. Undeniably, the first two elements are met: Brown is an African American, and thus a member of a protected class, and the parties do not dispute Brown was otherwise qualified to work at the Ford and General Dynamics locations.

The parties disagree regarding the third element of Brown's disparate treatment claim. Brown maintains she suffered an adverse employment action when Guardsmark denied her requests to transfer to Ford and General Dynamics. Specifically, she contends Guardsmark's refusal to transfer her caused her to suffer extremely long drives and to receive $5.00 per hour less in pay. (Doc. No. 22 at 57). Guardsmark notes Brown turned down a part-time position at Ford because she preferred a full-time position and argues "there is no evidence that a full time position ever became available" at Ford. (Doc. No. 20 at 7, 14). I agree with Guardsmark's argument that, because there were no positions open at Ford, Brown cannot sustain a finding of an adverse employment action regarding Guardsmark's denial of her request to transfer to the Ford location.

Brown presents evidence that the General Dynamics location offered a substantial increase in pay - approximately $4.61 more per hour than the BASF location. (Doc. No. 21-4). The Sixth Circuit has not ruled on this issue. One of our sister circuits has held that "the denial of a transfer *may* be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action…if the position sought was objectively better." *Alvarado v. Texas Rangers,* 492 F.3d 605, 614 (5th Cir. 2007). Guardsmark has not demonstrated the General Dynamics and BASF positions were objectively *similar*. As such, I find that by denying Brown a transfer to a position with a significant increase in pay, reasonable jurors could conclude Guardsmark denied

5

Brown the objective equivalent of a promotion, which would constitute an adverse employment action.

Under the last element, Brown must show that she was treated less favorably than a non-minority employee. "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated in all respects." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). To be similarly situated the non-minority employees must deal with the same supervisor, be subject to the same standards, and "engage in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.*

Brown testified Guardsmark treated Wheeler, a Caucasian employee and fire marshal at General Dynamics, more favorably than her because Wheeler and her daughter-in-law were allowed to work at the same location, while Guardsmark forbade Brown from working in the same location as her stepfather. (Doc. No. 21 at 24). Guardsmark contends Frey, the site manager in charge of staffing Brown and the one who ultimately made the decision not to transfer Brown, did not hire or place Wheeler or Boroff at General Dynamics, and therefore, Brown is not similarly situated to Wheeler. (Doc. No. 20 at 15-16). Yet, Heather Frey admitted that she looked into the staffing situation of Wheeler and Boroff and decided not to transfer either one from General Dynamics. (Doc. No. 26 at 42). As the Relationship Manager at Guardsmark it was Heather Frey's duty to decide whether to remove individuals for violating company policy. Consequently, Frey, along with her supervisor, contemplated removing Wheeler or Boroff and ultimately decided not to remove either of them. (Id.). I conclude, for purposes of establishing whether Brown was similarly situated to Wheeler, Guardsmark fails to show Frey did not act as Wheeler's supervisor when Frey decided not to remove Wheeler from the General Dynamics location. Accordingly, I conclude Brown has identified a genuine issue as to a material fact and has established her *prima facie* burden.

6

As a legitimate non-discriminatory reason for not transferring Brown, Guardsmark alleges that it did not transfer Brown due to a long standing practice not to assign family members to the same site. (Doc. No. 20 at 16-17). As evidence of this, Guardsmark references its personnel policy that prohibits situations in which relatives would be in a supervisor/supervisee relationship or conflict of interests. (Id.)

As evidence Guardsmark's non-discriminatory reason is pretextual, Brown points out the policy does not actually forbid family members like Brown and her step-father, who was not in a supervisor position, from being at the same location. (Doc. No. 22 at 10). I am persuaded by this argument, as the manner in which Frey characterizes the policy in her deposition is quite different from how the policy actually was carried out. (Doc. No. 26 at 31). Accordingly, I find Brown has demonstrated there is a genuine issue of material fact regarding whether Guardsmark discriminated against her by failing to transfer her to General Dynamics. Therefore, Guardsmark is not entitled to summary judgment.

Brown further alleges she suffered an adverse employment action when Guardsmark removed her from her position at General Dynamics. (Doc. No. 22 at 4-5). Guardsmark agrees that Brown satisfies the first three elements of her prima facie case. (Doc. No. 20 at 19).

Under the fourth prong of Brown's disparate treatment claim, she once again must establish Guardsmark treated her less favorably than a similarly situated non-minority employee. During Brown's deposition, she stated Guardsmark removed her because she took an excessive amount of time obtaining her security clearance, and also her dad told her Wheeler took an excessive amount of time getting her security clearance, but was not removed from her position at General Dynamics. (Doc. No. 21 at 32-33, 89). Drawing all reasonable inferences in favor of Brown, I conclude that because Wheeler was a fire marshal, who applied for a security clearance, and took a significant amount of time acquiring that clearance, she was similarly situated to Brown, who also was a fire

7

marshal, applied for a security clearance, but was removed because her application took a significant amount of time. Guardsmark argues Brown's statements about what her father told her only offer conclusory proof Brown was similarly situated with Wheeler. (Doc. No. 27 at 4). Brown has alleged specific facts in support of this element however, and it is reasonable to assume at this stage that Brown will be able to offer evidence at trial to support her claim.[1]

Guardsmark's stated non-discriminatory reason for removing Brown from General Dynamics is that it always removes an employee from a client's site if the client so requests. (Doc. No. 27 at 12). More specifically, it always removes employees who fail to obtain security clearances from General Dynamics. (Id.). Furthermore, Frey's affidavit states she often removes employees who fail to receive a security clearance, without regard to race. (Doc. No. 20-1 at 3-4). This reason satisfies Guardsmark's burden of production under the *McDonnell Douglas* framework.

Brown claims she was told that she acquired her security clearance and also claims she was fingerprinted for her security clearance. (Doc. No. 21 at 35). When asked why Brown did not obtain her security clearance, Frey first stated she did not know, but later remembered Brown did not receive her interim security clearance because she had filed for bankruptcy. (Doc. No. 26 at 45-46). Frey reiterated this point in her affidavit. (Doc. No. 20-1 at 5). Guardsmark has not identified any record evidence to show Brown in fact did not receive her final security clearance. Without more, Guardsmark leaves the record surrounding the security clearance vague and unclear. Thus, there is a genuine issue of material fact and summary judgment is inappropriate regarding this issue.

## 2. Failure-to-Promote Claim

The *McDonnell Douglas* framework also applies to Brown's failure-to-promote claim. Brown must produce evidence that shows: (1) she is a member of a protected class, (2) she applied and was

---

[1] Guardsmark's contention that "hearsay evidence cannot be considered on a motion for summary judgment" is not entirely true. (Doc. No. 27 at 5). *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (nonmoving party is not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

qualified for a promotion, (3) she was considered for but denied the promotion, and (4) other employees of similar qualifications not members of her protected class received the promotion. *Sutherland v. Michigan Dept. of Treas.,* 344 F.3d 603, 614 (6th Cir. 2003). The uncontested facts support a showing that Brown is a member of a protected class, she applied for and was considered for the promotion given to Roth in August 2010 and then Huss in June 2011, and she was qualified for the promotion. (Doc. No. 27 at 16).

      A plaintiff may not prove that she was similarly qualified to a non-minority employee merely by showing that they both applied for the same position. *White v. Columbus Metro. Hous. Auth.,* 429 F.3d 232 (6th Cir. 2005). "[T]o satisfy the fourth prong of the *prima facie* burden in a failure to promote case, it is incumbent upon the plaintiff to establish that she and the [non-minority employee] who ultimately was hired for the desired position had similar qualifications." *Id.* at 242. Roth was a member of the military police unit in the Michigan National Guard and a veteran of active service with the United States Army. (Doc. No. 20-1 at 6). Huss was a back-up supervisor and had a good past performance record. (Doc. No. 20-2 at 4). In comparison, Brown was an employee for Guardsmark for almost two years, and had a poor past performance record. Brown's employment history before Guardsmark reflects neither supervisor nor security guard experience. (Doc. No. 21 at 8-46). Considering the evidence in a light most favorably to Brown, I conclude Roth and Huss did not have superior experience to Brown in "material or relevant respects." *White,* 429 F.3d at 244. Roth apparently had no supervisor experience, and the fact that Brown was promoted to supervisor ahead of an incumbent assistant supervisor, (Doc. No. 26 at 56), supports an inference that the assistant supervisor position Huss held did not make her more qualified than Brown. Therefore, Brown is similarly qualified to Roth and Huss, and Brown has met her initial burden of establishing a *prima facie* case.

9

The burden then shifts to Guardsmark to identify a legitimate non-discriminatory reason for its decision not to promote Brown. *McDonnell Douglas*, 411 U.S. at 802. Guardsmark alleges Roth was promoted instead of Brown because of his "superior qualifications and recommendation." (Doc. No. 27 at 16). Additionally, Guardsmark contends Huss was promoted because she had better job performance, was more knowledgeable on computers, and had better people skills. (Doc. No. 26 at 54). Guardsmark also asserts Brown was not promoted because she had three reprimands and was removed from three job sites, and therefore was a less favorable candidate than both Roth and Huss. (Id. at 16-17). Given Guardsmark's stated non-discriminatory reasons for not promoting Brown, the burden shifts back to Brown to prove the stated reasons were a pretext.

Brown can meet this burden by showing that Guardsmark's reasons for not promoting her (1) "[have] no basis in fact, (2) the reason[s]…[were] not the actual reason[s], or (3) the reason[s] offered [were] insufficient to explain [Guardsmark's] action. *Pigott v. Battle Ground Acad.*, 909 F. Supp. 2d 949, 959 (M.D. Tenn. 2012), *citing Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). A plaintiff also may show pretext by presenting evidence which challenges the reasonableness of an employer's action. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (6th Cir. 2008).

Brown disputes Guardsmark's reasons for not promoting her by stating that Frey secretly documented only complaints about Brown and then used this information to deny her the promotion. (Doc. No. 22 at 12). The secret complaints Frey allegedly documented, however, were not articulated as the reason for the decision not to promote Brown. Rather, the three reprimands and three removals - which are supported in the record - are Guardsmark's stated reasons for not promoting Brown. (Doc. No. 27 at 16-17). Because Brown fails to identify evidence to show these reasons have no basis in fact, are not the actual reasons for denying promotion, or are insufficient to explain Guardsmark's denying her promotion, she cannot sustain her contention that Guardsmark's

10

proffered reason for denying her a promotion was a pretext.  Thus, Guardsmark has demonstrated there is not a genuine dispute as to a material fact on this claim and is entitled to summary judgment on this issue.

3.  **Retaliation Claim**

Title VII prohibits discrimination against any employee who has opposed a discriminatory action taken by an employer or who has made a charge in a Title VII proceeding.  42 U.S.C. § 2000e-3(a).  To succeed on a retaliation claim, Brown must show that (1) she engaged in a protected activity; (2) Guardsmark knew she participated in the protected activity; (3) Guardsmark took an adverse employment action; and (4) the adverse action was causally linked to the protected activity.  *Christopher v. Stouder Meml. Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991).  "Absent direct evidence of retaliation, courts apply the *McDonnell Douglas*… burden-shifting framework to analyze retaliation claims at the summary judgment stage."  *Pigott* , 909 F. Supp. 2d at 958-59.

Brown alleges she opposed Guardsmark's discriminatory conduct and engaged in a protected activity by complaining about Caucasian family members being permitted to work together at General Dynamics, not being promoted while working at General Dynamics after complaining about the Caucasian family members working together at General Dynamics, being removed after not getting her security clearance, and not being promoted to a supervisor position at Veyance.  (Doc. No. 22 at 15).  She further alleges that she participated in a protected activity by filing a Title VII charge with the EEOC.  (Id.).

I find these complaints do not meet the requisite standard of opposition required by Title VII.  While it is true that Brown complained to her supervisor about another family working together at the same location and about her security clearance, Brown did not communicate to her supervisor that she felt this activity was discriminatory.  (Doc. No. 21 at 52).  The term "oppose" is defined broadly.  *Crawford v. Metro. Govt. of Nashville and Davidson County, Tenn.,* 555 U.S. 271, 276

11

(2009) ("The term 'oppose,' being left undefined by the statute, carries its ordinary meaning, 'to resist or antagonize . . .; to contend against; to confront; resist; withstand,' Webster's New International Dictionary 1710 (2d ed.1958)."). Nevertheless, a plaintiff must specifically oppose those acts prohibited under Title VII and not just oppose any unfavorable employment decision. *See, e.g., Willoughby v. Allstate Ins. Co.,* 104 F. App'x 528, 531 (6th Cir. 2004) (concluding a complaint letter from an employee does not constitute protected activity where the letter was "contesting the correctness of a decision made by his employer" rather than asserting discrimination).

Though Brown's complaints are not sufficient to rise to the requisite level of opposition for Title VII retaliation, her EEOC filing is sufficient. 42 U.S.C. § 2000e-3(a). Guardsmark correctly asserts, however, that Brown only may rely on the actions Guardsmark took after the November 2010 EEOC charge for purposes of establishing an adverse employment action for retaliation. Accordingly, the only action that may be considered as retaliation is Guardsmark's decision not to promote Brown to supervisor in June 2011.

The only disputed prong is the fourth. Under this prong, Brown must produce evidence showing a causal connection between the decision not to promote and her filing of an EEOC charge. "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). The temporal proximity between the decision not to promote and Brown's filing of an EEOC charge is not sufficiently close to raise an inference of causation. Brown filed the charge in November 2010, but Guardsmark decided not to promote her at Veyance seven months later. (Doc. No. 21-13 and 20-1 at 6). Brown fails to present any additional evidence to support this element of her retaliation claim, and so she fails to sustain her burden of proving *prima facie* retaliation. Therefore Guardsmark is entitled to summary judgment.

Even assuming Brown could prove her *prima facie* claim for retaliation, her claim inevitably will fail because, as I concluded above, she fails to prove Guardsmark's proffered non-discriminatory reason for not promoting her was a pretext for discrimination.

## CONCLUSION

For the reasons stated above, Guardsmark's motion for summary judgment (Doc No. 20), is granted in part and denied in part. Brown's claims asserting (1) disparate treatment resulting from Guardsmark's refusal to place her at Ford, (2) discriminatory failure to promote, and (3) retaliation in violation of Title VII are dismissed. Brown may proceed with her allegations of disparate treatment resulting from (1) Guardsmark's refusal to place her at General Dynamics initially and (2) her removal from General Dynamics subsequently.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge